PREST-O-LITE CO. v. LESTER CO.

(Circuit Court, D. Connecticut. June 25, 1908.)

No. 1,263.

TRADE-MARKS AND TRADE-NAMES—SUIT FOR INFRINGEMENT—DEFENSE OF LI-
CENSE—CONSTRUCTION OF CONTRACT.

Two manufacturers of acetylene gas and tanks for holding the same
for use on automobiles, each bearing a metal plate with the name and
trade-mark of the maker thereon and representing that both tank and con-
tents were its product, entered into an agreement by which each agreed
not to refill and use a tank of the other without removing or obliterating
the plate thereon. *Held*, that such agreement was not a license to either
to use the tanks of the other, but was designed to define and protect
their respective rights, and afforded no defense to a suit to enjoin infring-
ing of trade-mark and unfair competition by using tanks of one of the
parties unless the plates thereon were removed or permanently obliterated,
and that the mere pasting of a paper over the plate was not such oblit-
eration.

In Equity. On motion for preliminary injunction.

Winter & Winter, for complainant.
Gross, Hyde & Shipman, for defendant.

PLATT, District Judge. The acts complained of at this hearing
are enough like those appearing in the suit in the federal court in the
Northern District of New York between this complainant and the
Avery Lighting Company, decided on May 19, 1908 (161 Fed. 648),
so that Judge Ray's action should be followed, if he was right, un-
less the complainant has by its own acts lost some of its rights. In
that respect the difference relied upon by the defendant is that the
complainant and defendant's principal, the Puritan Gas Company, en-
tered into an agreement about this general matter on March 7, 1908.
It is seriously contended that the terms of that contract materially mod-
ify the relation between the parties. It is my duty to interpret that
contract, and to discover whether it does put this defendant on any
better footing than the other defendant occupied at the hearing before
Judge Ray. The things which this defendant has done are manifestly
beyond the spirit and the letter of that agreement, and were conced-
ed to be so, by the defendant, at the hearing. The only question open
for debate is as to whether the defendant can, in fairness, adopt any
course in the treatment of complainant's tanks less drastic than that
demanded by the complainant.

The defendant calls the agreement of March 7, 1908, a "license
agreement." It is inartificially drawn, but I am unable to spell out of
it anything which bears out in a general way the proposition that it
was intended by the parties to have the effect of a license. It shows
that each party recognized the validity of the other's trade-mark, and
understood that the placing thereof on a plate attached to the steel
cylinder signified to the world that the tank and its contents were the
product of the party owning the trade-mark and served to distinguish
the product from that of other manufacturers. It is plainly agreed
that neither shall infringe the rights of the other, and it shows that

neither party intended to so treat the other's tanks as that any mistake could arise in the mind of any one as to what the tanks and contents in fact were. They agree definitely that neither will use the labeled tanks of the other without removing or obliterating the label, or otherwise indicating that the tank does not contain the product of the other.

Applying the rule of noscitur a sociis, any other method of so indicating ought to be as positive and permanent as the two methods suggested. Taking the contract at large, and examining all the ground covered by its four walls, it is a misnomer to call it a license agreement. Its principal purpose is to estop each party from denying the personal rights of the other in its trade-mark and method of using the same. It is certain that neither party is licensed to so use the other's tanks as to permit any one to believe that such tanks contain the product of the other. The pasting of a piece of paper over the name plate, no matter of what size, color, or print, would not indicate surely for all time and in all situations the fact that the tank of the complainant had been refilled with the product of the defendant. It might have that effect for the moment, but beyond that nothing would be certain. I think that it is the duty of the defendant to permanently and irrevocably destroy the guaranty which the complainant's trade-mark on its tank holds out to the world, if it wishes to refill it with any other product than that controlled by the complainant. It cannot be pretended that the spirit of the March, 1908, agreement was to permit either party to injure the other. The acts of the defendant disclosed by the affidavits show that such an interpretation has been put upon it, and the only way to prevent further wrong is to grant the prayer of the complainant in its entirety.

The defendant claims that to remove or obliterate the complainant's name plate from the tanks will surely cause explosions and great damage. The complainant denies the truth of that statement. I think that the plate can be removed or obliterated without danger, but the point is immaterial. Defendant's principal agreed in the contract not to use complainant's tanks without first removing or obliterating the plate, or taking other action, which, as I read it, must be equivalent thereto. If the defendant cannot come within the contract without danger to life and limb, it can easily refrain from interfering with complainant's labeled tanks in any manner. If the exception noted involves danger, it is not necessary to try to take advantage of the exception.

Let a decree be entered in accordance with this opinion.