SHAPIRO & ARONSON, Inc., v. FRANKLIN BRASS FOUNDRY et al.

(District Court, E. D. Pennsylvania. March 21, 1921.)

No. 2003.

1. Patents ⊕⇒35—Commercial success of design evidence of patentability.

Large and ready sale of an article made in accordance with a patented design in competition with others must be accepted as evidence of the artistic merit required to sustain the patent.

2. Patents ⊕⇒322—Fact of notice to infringer, by marking or otherwise, must be found by court.

Where the questions whether defendant in an infringement suit was notified of the infringement and continued to infringe thereafter, as required to warrant recovery by Rev. St. § 4900 (Comp. St. § 9446), are in controversy, both questions must be determined by the court, and cannot be delegated to a master on reference for an accounting.

3. Patents ⊕⇒283(2)—Continued selling of infringing articles on hand after notice constitutes infringement.

Admission by defendant that he continued selling infringing articles on hand after notice of the patent *held* to render him liable in a suit for infringement, though he denied further manufacture.

4. Patents ⊕⇒322—Where infringement is found, complainant is entitled to a full inquiry into its extent.

Where infringement by defendant is found or admitted, complainant is entitled to a full inquiry into its extent, and cannot be denied an accounting because defendant sought to qualify his admission by indeterminate statements to the effect that his infringement was negligible.

5. Patents ⊕⇒318(1)—Statute excluding recovery of "damages" does not exclude profits.

The provision of Rev. St. § 4900 (Comp. St. § 9446), that in a suit for infringement by a party failing to mark the patented article "no damages shall be recovered," except on proof of notice to defendant and continued infringement thereafter, *held* not to exclude recovery of profits made before notice; the word "damages" being used, not in its generic sense, but in the sense of differentiating damages from profits.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Damage—Damages.]

On motion to settle form of decree and reargument. Decree for complainant.

For former opinion, see 268 Fed. 551.

J. Bonsall Taylor and E. H. Fairbanks, both of Philadelphia, Pa. (Dodson & Roe, of New York City, of counsel), for plaintiff.

J. C. Levi and Hector T. Fenton, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. We state our conclusions with respect to the points reargued as follows:

[1] 1. We adhere to the views before expressed with respect to the validity of the letters patent. We find ourselves in accord with the propositions of law pressed upon our attention by counsel for defendant, but not in their application to the facts of this case. A design, in order to be patentable, must be "new, original, and ornamental." These words convey the thought that the design must possess artistic merit

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and be above the commonplace. The motive for the enactment of the law is to encourage in their efforts those who make their appeal to the artistic sense. As before stated, it is difficult to find an expression which will describe what it is which makes this appeal. The judgment delivered, with respect to any design or any work of art, that it possesses artistic merit, is founded almost solely on taste. Such merit could not very well be denied to any work of art which called forth the applause of a large number of people. Mere commercial success, it is true, is not a very satisfactory test of artistic merit; but, unless the question is to be determined altogether in accordance with the tastes of the one who is pronouncing judgment, it is the best test we have, because it is the practical equivalent of the fame which attaches to a work of art. If the design satisfies the tastes of many people, by whom it is pronounced to have artistic merit, such merit cannot very well be denied to it for patent purposes, without a denial of the very reward which by the law is held out to designers. The thought is that any one who designs something which is different from the designs which have preceded it, and which, because of its attractiveness to the eye, commands a ready and large sale, shall be rewarded by the exclusive right to make and sell. The commercial success may mean lack of artistic appreciation on the part of purchasers, or it may mean artistic merit in the design. By analogy to patented articles, it is regarded as evidence of the latter. The fact finding, made and adhered to, is that the patentee, in the language of the law, invented such a design, and to him, in consequence, belongs the reward.

[2] 2. A reargument was allowed upon the second point involved, in order that the fact situation with respect to it might be more fully developed. The ruling before made, that the plaintiff was entitled to an accounting, was made in deference to the practice in patent cases of so far developing the facts as that validity and infringement could be found, and referring to a master the inquiry into the facts bearing upon the question of profits and damages. Independently of the application of R. S. § 4900 (Comp. St. § 9446), this practice is followed in all cases almost without exception. When there is a controversy, however, with respect to a compliance with R. S. § 4900, two facts must be found by the court. One is that the notice, constructive or actual, required by the statute, has been given, and the other that acts of infringement followed the notice. The duty of making neither of these findings can be delegated to a master. The finding is a judicial act, which cannot be delegated. Both facts are in controversy.

We adhere to the finding, before made, that actual notice of the patent rights of the plaintiff was given to the defendant. It is true that there is no evidence to warrant the finding that in the notice the patent was described by number and date. When, however, a person was notified that what he is doing is an infringement of the patented right, and the person notified then disclaims any purpose to infringe, and declares his intention to desist from such infringement, if he afterwards continues or repeats it, he cannot escape the payment of damages on the plea that he was an innocent infringer without notice. This was

the ground on which the finding was made that the defendant had received the required notice. This finding, however, does not carry with it the further finding of infringement after notice. It was this fact, the evidence of which we wished to have more fully developed through a reargument.

[3] We adhere to the finding before made, and now repeat it with more definiteness, that the defendant did infringe after notice of the patent rights of plaintiff. The evidence of this is his own admission. He was dealing in chandeliers having the defendant's patented arm. This he had been doing, as he claimed, in ignorance of the plaintiff's patent rights. As soon as notified of those rights, he made a disclaimer of his purpose to infringe, and the promise that he would not further infringe. He had on hand at that time a stock of the infringing arms. His statement is that he did not afterwards make or supply himself with the patented arms, but his admission is that he did sell what he had in stock. When he was both making and selling, he was guilty of a double trespass upon the rights of plaintiff; but he did not rid himself of the guilt of infringement by ceasing to manufacture while continuing to sell. It is true that his statement on its face carries the impression that the number of chandeliers of the infringing type afterwards sold was negligible. The finding of the fact that sales were made, and that in consequence there was something for which the defendant could be called upon to account, justified, at least prima facie, a reference for the purpose of having an account stated. If it satisfactorily appeared that the number of sales was negligible, this would justify a refusal to require an accounting. We cannot make this second finding, however, on the mere and more or less loose statements of the defendant with respect to the number. This is the comment which, as before made, is criticized by the defendant. This neither means that a defendant assumes the burden of disproving infringement, nor that acts of infringement can be found from testimony which is wanting in definiteness.

[4] When, however, a defendant admits infringement, this is evidence from which infringement can be found; and, infringement having been found, an accounting cannot be denied on the ground of a finding that the infringement was negligible in extent merely because the defendant has accompanied, or sought to qualify, his admission of infringement by loose and indefinite statements with respect to the extent of it. When a patent is found to be valid and infringed, a plaintiff has the right to a full inquiry into the extent of the infringement, and the practice is not to make this inquiry previous to the findings of validity and infringement, but to defer it until these preliminary findings have been made.

[5] 3. A third point to which the reargument addressed itself was the correctness of the finding that, whether there was infringement after notice or not, the plaintiff would in any event have the right to an accounting for profits, or, stated in another way, the word "damages" in R. S. § 4900, does not include profits. The question involved has been diversely ruled in different circuits, and indeed in this district.

The question in many of the cases, usually cited as bearing upon it, was not squarely raised. It was, however, raised and met in Rollman v. Universal (D. C.) 207 Fed. 97, and Churchward v. Bethlehem (D. C.) 262 Fed. 438. The line of thought leading to the conclusion reached is short and direct. It is: (1) That the distinction has been recognized and stated between damages which are recoverable at law and profits for which a defendant may be called upon to account in equity; (2) the legislation affecting a money recovery in patent cases indicates that this distinction is carried into practical effect, because at times and in some instances damages have been allowed, at other times profits, and at still other times both; (3) there is in consequence justification for assuming that Congress in R. S. § 4900, used the word "damages," not in its generic sense of all that may be recovered, but in the sense of differentiating damages from profits, in accordance with the distinction which had in other legislation been recognized, or, in other words, that damages was exclusive of profits; and (4) there was a real and substantial motive for making the distinction, in that there would be justice in relieving an innocent infringer from being mulcted in damages, but there would be none in permitting him to retain profits which did not belong to him.

The cases in which the divergent and opposing rulings have been made are all (or many of them) listed and discussed in Churchward v. Bethlehem, and this court has placed itself in line with those which ruled that R. S. § 4900, excluded the recovery of damages but not profits. As long as these rulings stand unreversed, the court which made them must follow them.

Our attention, however, is now called to the case of Stark Bros. et al. v. Stark, 255 U. S. ——, 41 Sup. Ct. 221, 65 L. Ed. ——. This case is confidently relied upon as finally establishing the opposing view. When read without the knowledge of the special fact features of that case, and what the question there raised was, and how it arose, the confidence of counsel is justified. The case, it is true, was a copyright and not a patent case; but, inasmuch as the copyright law in this respect is almost identical in phraseology with R. S. § 4900, this feature becomes a distinction without a difference. Speaking of it as if it were a patent case, it is presented to us as a case in which there had been infringement before notice and also after notice. The trial court allowed a recovery for profits only before notice, and for both profits and damages after notice. The Circuit Court of Appeals modified the decree, by refusing both damages and profits before notice, and allowing both after notice. The case went to the Supreme Court on the sole point of the correctness of this limitation, and the decree of the Court of Appeals was affirmed. As so presented, the ruling seems decisive of the point.

We are indebted to the industry of counsel for plaintiff, however, for bringing to light the special fact features of the case. It is thus made clear that the point with which we are concerned did not arise, and was not even adverted to, by the trial court or either appellate court. The bill, although multifarious, was within equity rule 26 (201 Fed.

v, 118 C. C. A. v). It complained of unfair competition and (still treating it as a patent case) of infringement. The court had, of course, jurisdiction of the latter cause of action, but not of the former. It was held, however, that the court having jurisdiction of the infringement case might award full redress. The trial court held that this covered the whole time of both injuries. The Court of Appeals and Supreme Court limited the award of damages for unfair competition to the time after which the jurisdiction of the court attached. This date happened to be coincident with that of notice, because it was only after that date that the two wrongs ran together. Before that date the only cause of action was unfair competition, over which (no diversity of citizenship appearing) the court had no jurisdiction. We have not had an opportunity to verify this statement of fact, but accepting it, as we do, and reading the opinion in the light of these facts, it is clear that it has not the meaning which counsel for defendant gives to it.

Reliance is also placed upon the case of American Caramel Co. v. Thomas Mills Co., 162 Fed. 147, 89 C. C. A. 171. It is again clear that the distinction was not made between profits and damages. The only point ruled was that, the answer having raised the issue of notice, "damages" could not be recovered without proof of a compliance with the statute. It is true that the accounting was refused for the period before bill filed, but from the language employed in the opinion it is evident that the court assumed it was limited to "damages," although it is true there was a refusal to allow "an account for anything" before notice. This is one of the cases to which we referred as not squarely presenting the question. The point there raised was whether, with issue joined on the fact of notice, a plaintiff could recover "damages" without proof of notice. No point was made of the distinction between profits and damages.

The same court, however, ruled Sharpless v. Lawrence, 213 Fed. 423, 130 C. C. A. 59. The citation of this case as a supporting authority for the doctrine of the Rollman and Churchward Cases is criticized by counsel for defendant. Undoubtedly the cited case ruled only that the decree of a trial court, once entered and affirmed on appeal, could not be reformed after remand. The reasoning, however, on which the ruling was in part made, goes further. By it was reached the conclusion that the word "damages," when employed in a decree, did not have its generic meaning, but the specific meaning given it in the terminology of the law to distinguish it from profits. How much the more, then, does it have this meaning when used in a statute which deals with the subject of decrees which may allow damages or profits, or both. Notwithstanding the arguments so strongly pressed upon us, we adhere to the conclusion before reached that R. S. § 4900, disallows the recovery of damages, but not an accounting for profits.

4. The final subject discussed is that of permitting no advertising use to be made of the decree. We still think this condition a wholesome one. Litigation and advertisements have nothing in common. The effects and consequences of rulings made in the one are those which

logically result. The objective of the other is wholly psychological. It is impossible to adequately or even fairly state the legal effect of a judicial ruling in an advertisement. The abuse of judicial action in the attempt is notorious. The simple statement of a favorable decision, or even the fact that there have been proceedings in court, is fraught with danger of abuse, and, indeed, is never made, except to carry an inference of something with which the ruling has nothing to do. They are seldom, if ever, made in good faith. The flaring advertisements, which are all too common, that the goods offered for sale by the merchant were purchased at a sale ordered by a court of the United States sitting in bankrupty, or were bought at sheriff's sale, are illustrations. The motive and intent to deceive is usually present and always suspected.

Drafts of a decree in accordance with the opinion of the court may be submitted.